# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO.  15-CIV-60060-BLOOM/Valle

DAVID GONZALEZ,

      Plaintiff,

v.

SCOTT ISRAEL, as Sheriff of
Broward County, Florida, MIKE
MANRESSA and JUSTIN LAMBERT,

      Defendants.

_____/

## <u>ORDER ON MOTION TO DISMISS</u>

**THIS CAUSE** came before the Court on the Motion to Dismiss, ECF No. [7] (the "Motion") filed by Defendants Scott Israel, in his capacity as Sheriff of Broward County, Florida ("BSO"), Mike Manresa and Justin Lambert (Manresa and Lambert, the "Deputies," and with BSO, "Defendants") with respect to Plaintiff David Gonzalez's ("Plaintiff") Complaint, ECF No. [1].  The Court has carefully reviewed the Motion, all supporting and opposing submissions, the record in this case and applicable law. For the reasons set forth below, the Motion is **DENIED.**

## I.      BACKGROUND

This action centers on Plaintiff's allegations that the Deputies used excessive force against him and he was arrested without legal justification in violation of his civil rights.

The following facts are alleged in the Complaint.  On February 18, 2014, at or about 7:54 p.m., the Deputies responded to a Texaco gas station located at 4517 N. Dixie Highway, in Deerfield Beach, Broward County, Florida.  Compl. ¶ 12.  The Deputies were dispatched in reference to a possible theft of candy and beer from the Texaco station convenience store.  *Id.* ¶ 13.  Upon arrival, Manresa spoke with Mohamad Kabir, the manager of the Texaco station.  *Id.*

CASE NO. 15-CIV-60060-BLOOM/Valle

¶ 14.   As Manresa was exiting the gas station convenience store, Lambert arrived as a backup deputy.  *Id.* ¶ 15.   The Deputies drove behind the gas station and located Plaintiff, who was speaking with friends that live in the area behind the gas station.  *Id.* ¶ 16.   Manresa ordered Plaintiff to return to the front of the gas station so that the Deputies could conduct an investigation.  *Id.* ¶ 17.   Plaintiff complied with the order.  *Id.* ¶ 18.

At the front of the gas station, the Deputies accused Plaintiff of committing a theft inside the gas station convenience store.  *Id.* ¶ 19.   Plaintiff "vehemently and adamantly denied committing any theft."  *Id.* ¶ 20.   Manresa then entered the convenience store again, while Lambert remained with Plaintiff.  *Id.* ¶ 21.   When Manresa exited the convenience store, he requested that Plaintiff provide his driver license.  *Id.* ¶ 22.   Plaintiff "immediately" complied, handing his license to Manresa.  *Id.* ¶ 23.

While Manresa was in possession of Plaintiff's driver license and conducting a teletype check, Lambert approached Plaintiff, "stood within inches of Plaintiff's face, menacingly confronted Plaintiff without justification, and remained within inches of Plaintiff's face for almost ten seconds."  *Id.* ¶ 24.   Once Lambert "retreated a few feet," Manresa joined Lambert and both stood in front of Plaintiff for approximately forty seconds as Plaintiff again "vehemently and adamantly denied committing a theft."  *Id.* ¶ 25.   Lambert then punched Plaintiff in his face or neck.  *Id.* ¶ 26.   The Deputies moved closer to Plaintiff, and seconds later, Lambert again punched Plaintiff in his face or neck.  *Id.* ¶ 27.   After punching Plaintiff in his face or neck a second time, Lambert "immediately grabbed Plaintiff by his shirt or neck with both hands."  *Id.* ¶ 28.   Manresa joined Lambert in "grabbing" Plaintiff near his right arm or shoulder.  *Id.* ¶ 29.   The Deputies then "threw and smashed Plaintiff's face and body on the hard ground, knocking him unconscious."  *Id.* ¶ 30.   "At no time did Plaintiff strike or attempt to

CASE NO. 15-CIV-60060-BLOOM/Valle

strike Manresa or Lambert, or resist arrest in any way, including resisting being handcuffed." *Id.* ¶ 31.

The Deputies handcuffed Plaintiff as he lay motionless. *Id.* ¶ 32. Manresa searched Plaintiff's pockets for approximately two minutes while "kicking and rolling his unconscious, bleeding body over" as Lambert stood over Plaintiff. *Id.* ¶ 33. Approximately three minutes after knocking Plaintiff unconscious, Lambert called for emergency medical aid. *Id.* ¶ 34. After Plaintiff regained consciousness a few minutes later, Manresa propped Plaintiff up in a sitting position while they waited for emergency medical aid to arrive. *Id.* ¶¶ 35-36. Minutes later, medical aid arrived as Plaintiff remained handcuffed in a seated position on the ground. *Id.* ¶ 37. Plaintiff was subsequently helped onto a stretcher, placed in an emergency vehicle, and transported to North Broward Medical Center's Emergency Department for medical treatment. *Id.* ¶ 38.

As a result of the foregoing, Plaintiff suffered "significant" injuries including, but not limited to: "multiple comminuted fractures in the left side of his face, which includes the anterior and posterolateral wall of the left maxillary sinus extending into the inferior left orbital wall; comminuted, depressed fracture of the zygomatic arch on the left side; proptosis of the left eye; facial fracture involving the superior orbital wall involving the left frontal sinus; blood in the left maxillary sinus; preseptal soft tissue swelling; zygomatic arch fracture involving the glenoid fossa; various neck and back injuries and/or severe exacerbation of previous neck and back injuries." *Id.* ¶ 29.

The Deputies found no evidence to support arresting Plaintiff for theft, did not arrest Plaintiff for theft, or subsequently charge Plaintiff with theft. *Id.* ¶ 40. Plaintiff was, however, arrested on two counts of resisting an officer without violence, pursuant to Fla. Stat. § 843.02.

*Id.* ¶ 41.  Upon being medically cleared, Plaintiff was transported to jail in Broward County, Florida.  *Id.* ¶ 42.  Plaintiff remained in jail until he posted bond for the charges for which he was arrested.  *Id.* ¶ 43.

Plaintiff further alleges that Manresa "authored a false police report, wherein he fabricated numerous significant facts in an effort to support the false arrest and gratuitous violence, and in retaliation for Plaintiff exercising his protected speech."  *Id.* ¶ 44.  "Among other significant fabrications, Manresa swore under oath that Plaintiff resisted arrest."  *Id.* ¶ 45.  Specifically, Manresa asserted that he "attempted holding [Plaintiff] against the wall to calm him and place him in handcuffs, but he pushed his body forward."  *Id.*  Manresa further asserted that Plaintiff "attempted to pull his hands away" from Manresa's and Lambert's grasp.  *Id.*  Lambert authored a case supplemental report, "wherein he fabricated numerous significant facts in an effort to support the false arrest, gratuitous violence, and retaliation for Plaintiff exercising his protected speech."  *Id.* ¶ 46  Among other significant fabrications, Lambert asserted that he and Manresa "tried to push [Plaintiff] up against the gas station wall, to handcuff him for his and our safety" that "[Plaintiff] pushed himself off the wall" and that they "attempted to push [Plaintiff] up against the wall a second time, continuing to struggle and attempt to pull away from us."  *Id.* ¶ 47.

Plaintiff alleges that as a proximate cause of Manresa's and Lambert's "fabrications and material omissions" in the police reports, Plaintiff was formally charged via information by the Broward County Office of the State Attorney on March 13, 2014, with one count of resisting an officer without violence.  *Id.* ¶ 50.  On April 16, 2014, Manresa gave a sworn deposition in reference to Plaintiff's criminal matter, "at which time he again fabricated numerous significant facts in an effort to support the false arrest, gratuitous violence, and then-pending criminal

charges against Plaintiff." *Id.* ¶ 51.  However, on May 7, 2014, after having watched the video surveillance of the incident, the Broward County Office of the State Attorney dropped (via a *nolle prosse*) the charge against Plaintiff.  *Id.* ¶ 52.

The Complaint further alleges "almost identical" misconduct by Lambert separate and prior to the February 18, 2014 incident.  *Id.* ¶ 53.

According to the Complaint, Lambert was first hired by BSO on May 25, 2000 as a Detention Deputy Cadet.  *Id.* ¶ 58.  BSO was aware, at that time and at all times material to this matter, that Lambert had previously been arrested or detained in Broward County for, and formally charged with, the "criminal offense of strong arm robbery."  *Id.* ¶ 59.  Lambert's first day of work for BSO was June 12, 2000.  *Id.* ¶ 60.  Lambert was terminated by BSO effective October 12, 2000.  *Id.* ¶ 61.  That termination "was the result of substandard performance. Specifically, he was terminated because he failed to meet probationary standards and failed to satisfactorily complete the agency field training program."  *Id.* ¶ 62.  On December 13, 2000, Lambert failed the Florida Officer Certification Examination, one of the prerequisites for certification as an officer.  *Id.* ¶ 63.  BSO was aware of that failure.  *Id.* ¶ 64.  On January 31, 2001, Lambert retook and passed the Florida Officer Certification Examination.  *Id.* ¶ 65.  On or about February 26, 2001, Lambert was rehired by BSO, this time as a Certified Detention Deputy.  *Id.* ¶ 66.  On or about June 14, 2004, Lambert submitted an application to BSO for a law enforcement position.  *Id.* ¶ 67.  At that time and at all times relevant to this matter, BSO was aware that Lambert had applied to, and been rejected by, four different law enforcement agencies within the previous year for a law enforcement position, including once by BSO itself in approximately December, 2003.  *Id.* ¶ 68.  BSO was further aware that Lambert had received written reprimands or suspensions during his employment as a Detention Deputy.  *Id.* ¶ 69.

CASE NO. 15-CIV-60060-BLOOM/Valle

Nevertheless, on or about August 3, 2004, Lambert was conditionally hired by BSO as a Certified Deputy Sheriff.  *Id.* ¶ 70.  On or about January 27, 2005, Lambert was (non-conditionally) hired by BSO as a Certified Deputy Sheriff.  *Id.* ¶ 71.

On December 5, 2009, Lambert "falsely arrested and unnecessarily beat" an individual named Jorge Rodriguez, "a Hispanic male of similar age to Plaintiff," and "fabricated numerous significant facts causing Rodriguez to be prosecuted."  *Id.* ¶¶ 54, 193.  In connection with that incident, Lambert, several other deputies and BSO were subsequently sued in this forum.  *Id.* ¶ 55.  Those lawsuits resolved, one via settlement and one via jury verdict, for approximately $600,000.  *Id*. ¶ 194.  BSO was "aware of the specific unlawful conduct committed by Lambert."  *Id*. ¶ 56.  BSO nevertheless "failed to take any remotely reasonable measures to prevent a similar event from occurring in the future."  *Id.* ¶ 57.  The failure to act by BSO was the "moving force" behind the violation of Plaintiff's civil rights at issue here.  *Id*. ¶ 198.

Plaintiff asserts sixteen causes of action:  state law tortious battery against BSO vicariously (Count I), against Manresa (Count II) and against Lambert (Count III); state law negligent retention or supervision against BSO (Count IV); state law malicious prosecution against Lambert (Count V) and against Manresa (Count VI); state law intentional infliction of emotional distress against Lambert (Count VII) and against Manresa (Count VIII); state law false imprisonment against BSO vicariously (Count IX), against Manresa (Count X) and against Lambert (Count XI); false arrest, false imprisonment and the use of excessive force in violation of the Fourth Amendment to the United States Constitution cognizable under 42 U.S.C. § 1983 against Lambert (Count XII) and against Manresa (Count XIII); retaliation with respect to free speech by Lambert (Count XIV) and by Manresa (Count XV) in violation of the First Amendment to the United States Constitution cognizable under 42 U.S.C. § 1983; and failure by

CASE NO. 15-CIV-60060-BLOOM/Valle

BSO to act or train resulting in violation of Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 (Count XVI).

## II.    LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  To satisfy the Rule 8 pleading requirements, a complaint must provide the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, (2002).  While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").    Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).  The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also Am. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1288-90 (11th Cir. 2010).

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff.  *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the

CASE NO. 15-CIV-60060-BLOOM/Valle

non-moving party, and all facts alleged by the non-moving party are accepted as true."); *Iqbal*, 556 U.S. at 678.  A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim.  *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).  While the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.  "Dismissal pursuant to Rule 12(b)(6) is not appropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

## III.    DISCUSSION

Defendant seeks dismissal of all counts asserted in the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  Defendant argues that the Deputies are entitled to qualified immunity with respect to the Section 1983 claims; that Plaintiff has failed to allege a policy or practice necessary to support its *Monell* action against BSO; and that the state law claims fail due to the Deputies' qualified immunity, BSO's sovereign immunity, and for Plaintiff's failure to otherwise state a claim upon which relief can be granted.  The Court will address each issue in turn.

### A.    The Deputies Are Not Entitled to Qualified Immunity

Defendants maintain that the Deputies are entitled to qualified immunity, thereby

precluding Plaintiff's Section 1983 claims against them.  The Deputies do not establish their entitlement to qualified immunity under the facts as alleged in the Complaint.

### 1.  Qualified Immunity In The Section 1983 Context

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Kingsland v. City of Miami*, 382 F. 3d 1220, 1231 (11th Cir. 2004) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "This formulation of the qualified immunity inquiry is intended to protect government officials 'from undue interference with their duties and from potentially disabling threats of liability.'"  *Jordan v. Doe*, 38 F.3d 1559, 1565 (11th Cir. 1994) (quoting *Harlow*, 457 U.S. at 806); *see also Jackson v. Humphrey*, 776 F.3d 1232, 1241-42 (11th Cir. 2015) ("The purpose for qualified immunity is to permit officials to act without fear of harassing litigation as long as they can reasonably anticipate before they act whether their conduct will expose them to liability.").  "Qualified immunity is an immunity from suit rather than a mere defense from liability."  *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007).

"To receive qualified immunity, 'the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Kingsland*, 382 F.3d at 1232 (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)); *see also O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004) ("To be even potentially eligible for qualified immunity, the official has the burden of establishing that he was acting within the scope of his discretionary authority.") (citation omitted).  Once a defendant raises the issue of qualified immunity and demonstrates that the acts complained of were committed within the

CASE NO. 15-CIV-60060-BLOOM/Valle

scope of his discretionary authority, "the burden then shift[s] to the [plaintiff] to show that qualified immunity should not apply because:  (1) the officers violated a constitutional right; and (2) that right was clearly established at the time of the incident." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1166 (11th Cir. 2009).

"For an asserted right to be clearly established for purposes of qualified immunity, 'the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." *Jackson v. Sauls*, 206 F.3d 1156, 1164-65 (11th Cir. 2000) (quoting *Lassiter v. Alabama A & M Univ. Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994)).  "A right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1291-92 (11th Cir.2009) (internal citations omitted).  "Qualified immunity 'gives ample room for mistaken judgments' but does not protect 'the plainly incompetent or those who knowingly violate the law.'" *Kingsland*, 382 F.3d at 1231-32 (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)).

> For a constitutional right to be clearly established in a given case, the right's contours must be so clear that every, objectively reasonable official must understand that what the defendant, in the context of the circumstances of the case, is doing clearly violates the right. . . . [I]n the light of preexisting law, the unlawfulness must be apparent:  plain, clear, obvious.  Unless the government official's act is so obviously wrong, in light of preexisting law, that only a plainly incompetent official or one who was knowingly violating the law would have committed the act, the official is entitled to qualified immunity.

*Snider v. Jefferson State Cmty. Coll.*, 344 F.3d 1325, 1328 (11th Cir. 2003) (citing *Vinyard v.*

CASE NO. 15-CIV-60060-BLOOM/Valle

*Wilson*, 311 F.3d 1340, 1353 (11th Cir. 2002); *Malley*, 475 U.S. at 340-41).

"Additionally, the standard for determining if an officer violated clearly established law is an objective one and does not include inquiry into the officer's subjective intent or beliefs." *Jackson*, 206 F.3d at 1165 (citing *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir.1990). "Thus, a police officer is entitled to qualified immunity if a reasonable police officer could have believed his or her actions were lawful in light of clearly established law and the information possessed by the officer at the time the conduct occurred." *Id.* (citing *Stewart v. Baldwin County Bd. of Educ.*, 908 F.2d 1499, 1503 (11th Cir. 1990)).

## 2. The Deputies Acted Within Their Discretionary Authority

"A government official proves that he acted within the purview of his discretionary authority by showing 'objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority.'" *Hutton v. Strickland*, 919 F.2d 1531, 1537 (11th Cir. 1990) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988); *Hudgins v. City of Ashburn*, 890 F.2d 396, 404 (11th Cir. 1989)); *see also O'Rourke*, 378 F.3d at 1205 (discretionary authority inquiry looks to whether defendant's activity "is a part of his job-related powers and responsibilities"); *Crosby v. Monroe Cty.*, 394 F.3d 1328, 1332 (11th Cir. 2004) ("To determine whether an official was engaged in a discretionary function, we consider whether the acts the official undertook are of a type that fell within the employee's job responsibilities.").

Here, Plaintiff specifically alleges that the Deputies were "acting under color of state law in their capacity as deputy sheriffs" at all times relevant to the claims asserted against them. Compl. ¶ 1. Accordingly, the first prong of the qualified immunity inquiry is satisfied.

### 3. The Deputies Do Not Establish Their Entitlement to Qualified Immunity With Respect To The Section 1983 False Arrest Claims (Counts XXII, XXIII)

With respect to the second part of the qualified immunity analysis, Defendants do not challenge that the rights allegedly violated were clearly established, but rather maintain that the Deputies acted in compliance with the requirements of the constitutional protections at issue. The facts alleged in the Complaint do not support their argument.

### a. Qualified Immunity in the Fourth Amendment Seizure Context

The Fourth Amendment to the United States Constitution protects individuals from "unreasonable searches and seizures." U.S. Const. amend. IV. However, not all interactions between law enforcement officers and the individuals they serve and protect implicate the Fourth Amendment. *United States v. Jordan*, 635 F.3d 1181, 1185 (11th Cir. 2011) ("Not all interactions between law enforcement and citizens, however, implicate the scrutiny of the Fourth Amendment."). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may [a court] conclude that a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968). "There are three broad categories of police-citizen encounters for purposes of [the] Fourth Amendment analysis: (1) police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests." *United States v. Perez*, 443 F.3d 772, 777 (11th Cir. 2006).

"The first type of encounter, often referred to as a consensual encounter, does not implicate the Fourth Amendment." *Jordan*, 635 F.3d at 1186. "Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." *United States v. Drayton*, 536 U.S. 194, 200 (2002). "Even when the police have no

basis for suspecting an individual of wrongdoing, they may pose questions and ask for identification, provided that they do not induce cooperation by coercive means." *United States v. Allen*, 447 F. App'x 118, 120 (11th Cir. 2011); *see also United States v. Franklin*, 323 F.3d 1298, 1301 (11th Cir. 2003) ("There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets.").  Defendants do not argue that Plaintiff's encounter with the Deputies was consensual, nor attempt to prove voluntary consent based on a totality of circumstances pleaded in the Complaint, as would be required.  *See Jordan*, 635 F.3d at 1186; *Drayton*, 536 U.S. at 201 (no seizure where "reasonable person would feel free to terminate the encounter"); *see also* Compl. ¶¶ 17-18 (Manresa "ordered" Plaintiff to return to the front of the gas station so that the Deputies could conduct an investigation, and Plaintiff complied with the "order").

An investigatory or *Terry* stop "involves reasonably brief encounters in which a reasonable person would have believed that he or she was not free to leave." *Perez*, 443 F.3d at 777 (quoting *United States v. Espinosa-Guerra*, 805 F.2d 1502, 1506 (11th Cir. 1986)).  "In order to justify an investigatory seizure, 'the government must show a reasonable, articulable suspicion that the person has committed or is about to commit a crime.'" *Allen*, 447 F. App'x at 120 (quoting *Perez*, 443 F.3d at 777).  Reasonable suspicion "does not require officers to catch the suspect in a crime." *United States v. Acosta*, 363 F.3d 1141, 1145 (11th Cir. 2004).  Instead, "[a] reasonable suspicion of criminal activity may be formed by observing exclusively legal activity." *United States v. Gordon*, 231 F.3d 750, 754 (11th Cir. 2000).  Thus, while "reasonable suspicion is a less demanding standard than probable cause, it requires 'at least a minimal level of objective justification for making the stop.'" *Allen*, 447 F. App'x at 120 (quoting *Jordan*, 635 F.3d at 1186).  "In determining whether there is reasonable suspicion to support the stop, [a court

CASE NO. 15-CIV-60060-BLOOM/Valle

must] consider the totality of the circumstances in light of the officer's own experience and evaluate whether the officer can 'point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion.'"  *United States v. Caraballo*, 595 F.3d 1214, 1222 (11th Cir. 2010) (quoting *United States v. Yuknavich*, 419 F.3d 1302, 1311 (11th Cir. 2005)).

"[I]f the totality of circumstances indicates that an encounter has become too intrusive to be classified as an investigative detention, the encounter is a full-scale arrest, and the government must establish that the arrest is supported by probable cause."  *United States v. Hastamorir*, 881 F.2d 1551, 1556 (11th Cir. 1989); *see also United States v. Sanders*, 394 F. App'x 547, 549 (11th Cir. 2010) ("In distinction from a *Terry* stop, a 'full-scale arrest' implicates a higher level of Fourth Amendment scrutiny and requires a showing of probable cause.") (citation omitted). "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime."  *Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009) (quoting *United States v. Gonzalez*, 969 F.2d 999, 1002 (11th Cir. 1992)).  "Although probable cause requires more than suspicion, it does not require convincing proof and need not reach the same standard of conclusiveness and probability as the facts necessary to support a conviction."  *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (quotations omitted).  The probable cause inquiry is "undertaken in light of the specific context of the case, not as a broad general proposition."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

"When an officer asserts qualified immunity [with respect to a *Terry* stop], the issue is not whether reasonable suspicion existed in fact, but whether the officer had 'arguable' reasonable suspicion to support an investigatory stop."  *Jackson*, 206 F.3d 1156, 1165-66 (11th

CASE NO. 15-CIV-60060-BLOOM/Valle

Cir. 2000).  Thus, "[a] law enforcement official who reasonably but mistakenly concludes that reasonable suspicion is present is still entitled to qualified immunity."  *Id.*  The same is true regarding probable cause for a full scale arrest:  "Absent probable cause, an officer is still entitled to qualified immunity if arguable probable cause existed."  *Case*, 555 F.3d at 1327 (citing *Lee*, 284 F.3d at 1195).  "Arguable probable cause exists 'where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest.'"  *Id.* (quoting *Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir. 2001)).

### b.      Application to the Instant Matter

The interaction between Plaintiff and the Deputies on February 18, 2014 was prompted by the Deputies' investigation into a possible theft at a gas station.  Plaintiff was ultimately arrested for and charged with resisting an officer without violence.  Defendants do not argue that arguable reasonable suspicion or arguable probable cause to detain or arrest Plaintiff existed with respect to a theft crime.  Rather, they argue that a reasonable officer in the position of the Deputies – conducting an investigation into a theft – could have believed that reasonable suspicion or probable cause to detain or arrest Plaintiff existed with respect to the resisting without violence charge.[1]

The crime for which Plaintiff was arrested – resistance or obstruction without violence – is defined as follows:  Whoever shall resist, obstruct, or oppose any officer . . . in the execution of legal process or in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree . . . ."  Fla. Stat.

---

[1] Defendants invoke the standard for qualified immunity with respect to the Deputies detaining Plaintiff in order to investigate the possible theft crime.  But Plaintiff's Fourth Amendment claims do not appear to be based on an improper *Terry* stop.  Rather, the Complaint centers on Plaintiff's actual arrest.

CASE NO. 15-CIV-60060-BLOOM/Valle

§ 843.02.  "[T]o support a conviction for obstruction without violence, the State must prove: (1) the officer was engaged in the lawful execution of a legal duty; and (2) the defendant's action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty." *C.E.L. v. State*, 24 So. 3d 1181, 1185-86 (Fla. 2009).

The Court first notes that in support of their argument, Defendants repeatedly invoke facts outside the pleading – that Plaintiff was drunk, cursed at the officers, engaged in disruptive behavior, and so on.  So much so, that they seem to have forgotten that those facts, whether ultimately true or not, are irrelevant at this stage in the litigation.  The well-pleaded allegations in Plaintiff's Complaint will alone guide the Court in considering the instant Motion to Dismiss.

Defendants argue that Plaintiff's "vehement and adamant" denial of wrongdoing during the Deputies' investigation into the possible theft can arguably be construed as generating probable cause as to obstruction or resisting without violence.  But how can verbally denying involvement in criminal activity alone create arguable probable cause as to resisting or obstructing legal process with respect to the very crime under investigation?  Under that theory, simply denying involvement in any crime under investigation gives the investigating officer unequivocal license to arrest – not merely to question or detain – the person denying involvement, on the basis that he or she is obstructing the investigation.  Defendants ask the Court to pose a Morton's Fork to every citizen faced with investigation by law enforcement: admit involvement, and create probable cause for arrest as to the crime under investigation; or deny involvement, and create arguable probable cause for arrest on the misdemeanor of resisting without violence.  The Court rejects this "between a rock and a hard place" decision as illogical.. *See also Petithomme v. Cnty. of Miami-Dade*, 511 F. App'x 966, 971 (11th Cir. 2013) (holding that plaintiff's request to go home in order to retrieve identification could not give rise to

CASE NO. 15-CIV-60060-BLOOM/Valle

arguable probable cause for arrest for obstruction:   "a reasonable officer could not have concluded that Plaintiff was acting to or was attempting to 'resist, obstruct or oppose' the Officers from viewing her identification merely because, while in the process of searching, she could not locate the identification for the vehicle as quickly as the Officers would have liked"); *Davis v. Williams*, 451 F.3d 759, 767 (11th Cir. 2006) (interpreting Florida obstruction and disorderly conduct statutes and finding that "an owner's simple inquiry as to why officers are present on his property" cannot give rise to arguable probable cause for obstruction); *D.G. v. State*, 661 So. 2d 75, 76 (Fla. 2d DCA 1995) (finding juvenile's verbal protests and refusal to answer officer's questions, unaccompanied by physical opposition or threats, did not constitute obstruction, explaining that a "person's words alone can rarely, if ever, rise to the level of an obstruction"); *D.A.W. v. State*, 945 So. 2d 624 (Fla. 2d DCA 2006) (finding no obstruction as plaintiff "remained at a distance and did not approach the officer or physically threaten the officer or arrestee," and "[t]here is no evidence that [plaintiff] made any statements encouraging anyone to take action against the police officer"); *Francis v. State*, 736 So. 2d 97, 99 (Fla. 4th DCA 1999) ("with limited exceptions, physical conduct must accompany offensive words to support a conviction under [Fla. Stat. § 843.02]"); *Yessin v. City of Tampa, Fla.*, 2015 WL 791168, at *8 (M.D. Fla. Feb. 25, 2015) (arguable probable cause for arrest for violation of Fla. Stat. § 843.02 could not be established where plaintiff only verbally interrupted officer's investigation into an altercation but complied with officers' instruction to "back off").

The facts alleged in the Complaint do not establish that the Deputies had arguable probable cause to arrest Plaintiff for obstruction without violence based on Plaintiff's response to the Deputies' investigation into the possible theft on the evening in question.  Therefore, they are not entitled to qualified immunity with respect to Counts XXII and XXIII of the Complaint.

CASE NO. 15-CIV-60060-BLOOM/Valle

4.      **The Deputies Do Not Establish Their Entitlement to Qualified Immunity With Respect To The Section 1983 Excessive Force Claims (Counts XXII, XXIII)**

Because the Deputies cannot establish, on the facts alleged in the Complaint, that there was arguable probable cause to arrest Plaintiff for violation of Fla. Stat. § 843.02, they cannot establish their entitlement to qualified immunity as to Plaintiff's claims that the Deputies used excessive force in effectuating that arrest.

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Lee*, 284 F.3d at 1197 (citing *Graham v. Connor*, 490 U.S. 386, 394-95 (1989)).  "The question is whether the officer's conduct is objectively reasonable in light of the facts confronting the officer."  *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002); *see Lee*, 284 F.3d at 1197 (stating that "to determine whether the amount of force used by a police officer was proper, a court must ask whether a reasonable officer would believe that this level of force is necessary in the situation at hand").  "Use of force must be judged on a case-by-case basis 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993) (quoting *Graham*, 490 U.S. at 396).

Generally, "[n]ot only does the right to make an arrest or investigatory stop necessarily carry with it the right to use some degree of physical coercion or threat thereof to effect it, but . . . the typical arrest involves some force and injury."  *Reese v. Herbert*, 527 F.3d 1253, 1272 (11th Cir. 2008) (quoting *Graham*, 490 U.S. at 396; *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002).  However, "even *de minimis* force will violate the Fourth Amendment if the officer is not entitled to arrest or detain the suspect."  *Zivojinovich v. Barner*, 525 F.3d 1059,

CASE NO. 15-CIV-60060-BLOOM/Valle

1071 (11th Cir. 2008) (citing *Bashir v. Rockdale County, Ga.*, 445 F.3d 1323, 1332 (11th Cir. 2006)). That is, "[i]f no probable cause authorizes an arrest, *any* use of force to effectuate the unlawful arrest is a violation of the Fourth Amendment. *Williams v. Sirmons*, 307 F. App'x 354, 360 (11th Cir. 2009) (citing *Bashir v. Rockdale County, Ga.*, 445 F.3d 1323, 1331-33 (11th Cir. 2006) ("[I]f an arresting officer does not have the right to make an arrest, he does not have the right to use any degree of force in making that arrest."). Therefore, in the absence of probable cause to arrest, an office cannot establish qualified immunity from suit for the use of excessive force in effectuating that arrest. *See Reese*, 527 F.3d at 1273 (denying summary judgment on qualified immunity as to excessive force claim where, due to the absence of probable cause, [an officer] was not justified in using any force against [the plaintiff]"); *Jackson*, 206 F.3d at 1171 ("[A] claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim."); *Thompson v. Mostert*, 489 F. App'x 396, 397 (11th Cir. 2012) (affirming denial of summary judgment on qualified immunity as to use of excessive force where officers could not establish arguable probable cause to arrest plaintiff); *Bakri v. City of Daytona Beach*, 716 F. Supp. 2d 1165, 1175 (M.D. Fla. 2010) ("Because the arrest of Plaintiff was, as determined above, not supported by probable cause or arguable probable cause, the officers used excessive force as a matter of law in effectuating that unlawful arrest.").

As explained above, the facts alleged in the Complaint do not demonstrate that the Deputies has arguable probable cause to arrest Plaintiff for resisting or obstruction without violence based solely on his denial of involvement with the theft crime then under investigation. As a result, the Deputies cannot establish qualified immunity with respect to Plaintiff's excessive force claims.

5.      **The Deputies Do Not Establish Their Entitlement to Qualified Immunity With Respect To The Section 1983 Free Speech Retaliation Claims (Counts XIV, XV)**

The Complaint alleges that Plaintiff, when arrested, was engaging in what constitutes protected speech in a traditional public forum.  *See Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983) (holding that traditional public fora include public streets); *Crowder v. Housing Auth. of Atlanta*, 990 F.2d 586, 590 (11th Cir.1993) (In traditional public fora, "the state may enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels for communication.") (quotation omitted).

"In general, the right of an individual to be free from retaliation for his or her exercise of First Amendment freedoms is clearly established." *Battiste v. Lamberti*, 571 F. Supp. 2d 1286, 1298 (S.D. Fla. 2008) (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1255-56 (11th Cir. 2005) ("This Court and the Supreme Court have long held that state officials may not retaliate against private citizens because of the exercise of their First Amendment rights.").  "The reason why such retaliation offends the Constitution is that it threatens to inhibit exercise of the protected right." *Crawford-El v. Britton*, 523 U.S. 574, 589 n.10 (1998) (citations omitted).  "To state a retaliation claim, the commonly accepted formulation requires that a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005); *see also Castle v. Appalachian Technical College*, 631 F.3d 1194, 1197 (11th Cir. 2011) (To establish a First Amendment free speech retaliation claim, a plaintiff must show that "(1) her speech was constitutionally protected; (2) she suffered adverse conduct

that would likely deter a person of ordinary firmness from engaging in such speech; and (3) there was a causal relationship between the adverse conduct and the protected speech.").

However, "[w]hen a police officer has probable cause to believe that a person is committing a particular public offense, he is justified in arresting that person, even if the offender may be speaking at the time that he is arrested." *Redd v. City of Enter.*, 140 F.3d 1378, 1383 (11th Cir. 1998). Thus, while "arrest in retaliation for exercising one's First Amendment rights may [] provide a basis for a § 1983 claim . . . the existence of probable cause is an absolute bar to [that] claim[]. *Anderson v. City of Naples*, 501 F. App'x 910, 916 (11th Cir. 2012) (citations omitted); *see also Redd*, 140 F.3d at 1383 ("Because we hold that the officers had arguable probable cause to arrest [the plaintiff] for disorderly conduct, we must hold that the officers are also entitled to qualified immunity from the plaintiffs' First Amendment claims."); *Phillips v. Irvin*, 222 F. App'x 928, 929 (11th Cir. 2007) ("Because we agree with the district court that [the officer] had arguable probable cause to arrest [the plaintiff], we reverse the district court's denial of qualified immunity to [the officer] on [the plaintiff's] First Amendment retaliation claim.").

Defendants, again, do not challenge the merits of Plaintiff's First Amendment retaliation claims but, rather, argue that the Deputies are protected from suit on those claims due to qualified immunity. However, as discussed above, the Deputies cannot establish on the pleadings that they had arguable probable cause to arrest Plaintiff. As such, qualified immunity cannot act to bar Plaintiff's First Amendment claims on those grounds.

**B.      Plaintiff Sufficiently Pleads His Section 1983 *Monell* Claim (Count XVI)**

Defendants argue that Plaintiff's Complaint speaks only to an isolated instance of wrongful conduct and, therefore, fails to state a section 1983 claim against BSO. However, the

CASE NO. 15-CIV-60060-BLOOM/Valle

Complaint contains factual allegations sufficient at this stage to plausibly state BSO's deliberate indifference to the violation of Plaintiff's civil rights.

### 1. Section 1983 *Monell* Claim For Failure to Train/Supervise

Any person acting under color of state law who violates a constitutional right of another is liable for the injured party's losses.  42 U.S.C. § 1983.  "Section 1983 provides a fault-based analysis for imposing municipal liability; therefore, plaintiffs must establish that the city was the person who caused them to be subjected to their deprivation."  *Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986).  "[W]hen execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury th[en] the government as an entity is responsible under § 1983."  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).  "A plaintiff . . . has two methods by which to establish a [municipal actor's] policy:  identify either (1) an officially promulgated [] policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the [municipal actor]."  *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003).  "To establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice[; h]owever, the custom need not receive formal approval."  *Depew*, 787 F.2d at 1499; *see also Smith v. Mercer*, 572 F. App'x 676, 679 (11th Cir. 2014) ("A plaintiff must identify a 'consistent and widespread practice' of constitutional deprivations to prove local government liability for an unofficial custom."); *Carter v. Columbus Consol. Gov't*, 559 F. App'x 880, 881 (11th Cir. 2014) ("the challenged practice or custom must be 'so pervasive as to be the functional equivalent of a formal policy'") (quoting *Grech*, 335 F.3d at 1330 n. 6).

"In addition, . . . a municipality's failure to correct the constitutionally offensive actions

of its employees can rise to the level of a custom or policy 'if the municipality tacitly authorizes these actions or displays deliberate indifference' towards the misconduct." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1308 (11th Cir. 2001) (citing *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987)); *Canton v. Harris*, 489 U.S. 378, 388 (1989) (rejecting city's argument that municipal liability can be imposed only where the challenged policy itself is unconstitutional, and finding that "there are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983"). That is, "a Section 1983 claim for inadequate training exists only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Riley v. Newton*, 94 F.3d 632, 638 (11th Cir. 1996) (quotation omitted); *see also Canton*, 489 U.S. at 389 ("Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983."); *Gold v. City of Miami*, 151 F.3d 1346, 1350-51 (11th Cir. 1998) ("[A]n allegation of failure to train or supervise can be the basis for liability under § 1983 . . . only where the municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy causes the employees to violate a citizen's constitutional rights.").

"Deliberate indifference can be established in two ways: by showing a widespread pattern of similar constitutional violations by untrained employees or by showing that the need for training was so obvious that a municipality's failure to train its employees would result in a constitutional violation. *Mingo v. City of Mobile, Ala.*, ---F. App'x---, 2014 WL 6435116, at *6 (11th Cir. Nov. 18, 2014) (citing *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011); *Gold*, 151 F.3d at 1350-52). "To establish a city's deliberate indifference, 'a plaintiff must present some

CASE NO. 15-CIV-60060-BLOOM/Valle

evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action.'"  *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1293 (11th Cir. 2009) (quoting *Gold*, 151 F.3d at 1350).  "Prior incidents also must involve facts substantially similar to those at hand in order to be relevant to a deliberate-indifference claim."  *Shehada v. Tavss*, 965 F. Supp. 2d 1358, 1374 (S.D. Fla. 2013) (citing *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005)).

### 2. Plaintiff's *Monell* Claim is Sufficiently Pleaded

Here, Plaintiff alleges that BSO failed to provide sufficient training to or supervision of Lambert – whose hiring and retention by BSO was itself questionable, and who had previously exhibited improper behavior identical to the incident alleged – as the basis for its *Monell* action against BSO.  *See* Compl. ¶¶ 195-97.  Defendants argue that Plaintiff has identified only "one random instance from the entire existence of the BSO and out of the tens of thousands of arrests made by its deputies to support his *Monell* action."  Mtn. at 14.  Defendants misconstrue Plaintiff's stated basis for his *Monell* claim.

One reading of Plaintiff's *Monell* claim is that the need to train and supervise an unqualified employee who engaged in specific constitutional violations in order to prevent those violations from recurring is "so obvious" that the failure to train or supervise constitutes deliberate indifference to the actual recurrence of the same violations.  Defendants are correct that, "[n]ormally, random acts or isolated incidents are insufficient to establish a custom or policy."  *Depew*, 787 F.2d at 1499.  However, "a single constitutional violation may result in municipal liability when there is 'sufficient independent proof that the moving force of the violation was a municipal policy or custom.'"  *Vineyard v. Cnty. of Murray, Ga.*, 990 F.2d 1207, 1212 (11th Cir. 1993) (quoting *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1504 n. 10 (11th Cir.

CASE NO. 15-CIV-60060-BLOOM/Valle

1985)); *see also Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005) ("Municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances.") (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)); *McMillian v. Johnson*, 88 F.3d 1573, 1577 (11th Cir. 1996) ("A municipality may be held liable for a single act or decision of a municipal official with final policymaking authority in the area of the act or decision."); *Congleton v. Gadsden Cnty., Fla.*, 2011 WL 2174350, at *4 (N.D. Fla. June 1, 2011) ("[A] single decision may be enough to establish unofficial policy."); *but see "City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.").  Plaintiff specifically alleges that BSO's failure to train or supervise Lambert despite knowing of his alleged lack of qualifications for his employment and in the face of his past violations was the "moving force" behind Lambert's violation of Plaintiff's civil rights.  Lambert's alleged past violations may establish that "the need for training was so obvious" that BSO's failure to do so substantiates Plaintiff's section 1983 claim.  That possibility cannot be excluded on the pleadings.

Viewing the Complaint as attempting to illustrate "a widespread pattern of similar constitutional violations," Plaintiff does not, in point of fact, seek to make out his Section 1983 failure to train or supervise claim against BSO on the basis of a single, isolated occurrence. Rather, the Complaint sets out a string of facts to effect that Lambert was unqualified for his position with BSO. The Complaint alleges that Lambert previously engaged in activity identical to that complained of by Plaintiff and claims that BSO knew all this and determined not to do anything about it.  As more specifically detailed above, Plaintiff alleges that Lambert:  had been

arrested for robbery prior to applying for his first position with BSO; was fired from that position for substandard performance and failure to satisfactorily complete training; when rehired, received written reprimands or suspensions during his employment at that position; failed in his first attempt at the Florida Officer Certification Examination, one of the prerequisites for certification as an officer; and had applied to, and been rejected by, four different law enforcement agencies prior to his application for a law enforcement position with BSO. Plaintiff alleges that BSO was aware of all of this, at each step in Lambert's employment. Plaintiff further alleges that in 2009, Lambert "falsely arrested and unnecessarily beat" a Hispanic male of similar age to Plaintiff, and "fabricated numerous significant facts causing [him] to be prosecuted." Lambert and BSO were sued in connection with that incident. Those lawsuits were resolved, one via settlement and one via jury verdict, for approximately $600,000. Plaintiff claims that, despite this, BSO did nothing by way of training or supervision to ensure that Lambert's misconduct did not recur. The conduct did recur and Plaintiff alleges it directly resulted in violation of his constitutional rights and attendant damages.

The question is, therefore, whether BSO's failure to train Lambert when faced with his alleged lack of qualifications and significant but single incident of false arrest, excessive force and false prosecution can constitute a pattern of behavior as to which BSO showed deliberate indifference. The Court concludes that Plaintiff's allegations in this regard are sufficient to survive a motion to dismiss. *See, e.g., Wilson ex rel. Estate of Wilson v. Miami-Dade Cnty.*, 2005 WL 3597737, at *4 (S.D. Fla. Sept. 19, 2005) (denying motion to dismiss where plaintiff alleged that county was aware of other incidents of similar conduct by an individual employee which supported a theory that there was a failure to supervise that employee, thereby sufficiently stating a section 1983 action against the county); *Hooks v. Rich*, 2006 WL 565909, at *4 (S.D.

CASE NO. 15-CIV-60060-BLOOM/Valle

Ga. Mar. 7, 2006) (noting, in section 1983 context, that "[r]epeated abuse by a single officer may be sufficient to constitute a pattern of abuse"); *Beck v. City of Pittsburgh*, 89 F.3d 966, 972-73 (3d Cir. 1996) (prior complaints about officer involving violent behavior in arresting citizens identical to those at issue were sufficient for jury to infer that municipality had knowledge of that officer's propensity for misbehavior and could support the conclusion that municipality had a pattern of tacitly approving the use of excessive force); *Hogan v. City of Easton*, 2006 WL 3702637, at *10 (E.D. Pa. Dec. 12, 2006) ("It is clear that when a plaintiff alleges that an officer violated his constitutional rights by using excessive force, municipal liability may be imposed under § 1983 if that same officer has a history of excessive force conduct."); *McAllister v. City of Memphis*, 2005 WL 948762, at *5 (W.D. Tenn. Feb. 22, 2005) (denying summary judgment for defendant on Section 1983 *Monell* action where a genuine issue of material fact existed as to whether a meaningful investigation was conducted by municipality into several allegations of wrongdoing by a single officer, alleged to have violated plaintiff's civil rights); *Geist v. Ammary*, 2012 WL 6762010, at *7 (E.D. Pa. Dec. 20, 2012) (finding Section 1983 claims, based on failure to train and deliberate inference, sufficiently pleaded where plaintiff alleged that city provided a particular officer use of a Taser despite inadequate training and with actual notice that that officer had used excessive force in the past, and that that officer later violated plaintiff's civil rights); *Williams v. City of Chicago*, 658 F. Supp. 147, 155 (N.D. Ill. 1987) (Section 1983 *Monell* claim could not be dismissed where plaintiff alleged that officer "accumulated significantly more complaints, accusing him of more serious kinds of incidents, than the average similarly situated officer").

CASE NO. 15-CIV-60060-BLOOM/Valle

C.   **Plaintiff States Claims For State Law False Imprisonment (Counts IX-XI), Malicious Prosecution (Counts V-VI), Battery (Counts I-III), and Intentional Infliction of Emotional Distress (Counts VII-VIII)**

Defendants argue that Plaintiff's state law claims for false imprisonment and malicious prosecution fail because the Deputies had probable cause to arrest Plaintiff.  *See*, *e.g.*, *DeGraw v. Coats*, 2011 WL 2270398, at *2 (M.D. Fla. June 6, 2011) ("[W]here probable cause exists, no claim for false arrest or imprisonment can be sustained under either federal or state law" (citing *Marx v. Gumbinner*, 905 F.2d 1503, 1505-06 (11th Cir. 1990); *Bolanos v. Metro. Dade Cty.*, 677 So. 2d 1005 (Fla. 3rd DCA 1996)); *German v. Sosa*, 399 F. App'x 554, 558 (11th Cir. 2010) ("absence of probable cause for the original proceeding" is a required element of common law malicious prosecution) (quoting *Durkin v. Davis*, 814 So.2d 1246, 1248 (Fla. 4th DCA 2002)); *Von Stein v. Brescher*, 904 F.2d 572, 584 n.19 (11th Cir. 1990) ("Under Florida law, probable cause is an affirmative defense to a claim for false arrest and lack of probable cause is an element that must be established in a malicious prosecution case." (citing *Weissman v. K-Mart Corp.*, 396 So. 2d 1164 (Fla. 3d DCA 1981)).  However, as discussed above, Defendants cannot even establish at this stage that the Deputies had arguable probable cause to arrest Plaintiff, let alone probable cause.  Therefore, those claims survive.

Defendants also argue that Plaintiff's state law battery claim is foreclosed because his arrest was justified, and "[p]olice officers who use force in making a lawful arrest receive a presumption of good faith and are liable for battery 'only where the force used is clearly excessive.'"  *Cutino v. Untch*, ---F. Supp. 3d---, 2015 WL 178481, at *8 (S.D. Fla. Jan. 14, 2015) (quoting *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. 3d DCA 1996)).  First, Defendants have not established that Plaintiff was arrested with probable cause.  Second, "[w]hile assault and battery as an 'ordinary incident' of arrest is not an independent tort and is considered in

28

CASE NO. 15-CIV-60060-BLOOM/Valle

calculating damages in an action for false arrest, 'arguably excessive force' to effect an arrest can present a jury question on an assault and battery count against an officer and municipality." *Johnson v. State Dep't of Health & Rehabilitative Servs.*, 695 So. 2d 927, 929 (Fla. 2d DCA 1997) (citing *Lester v. City of Tavares*, 603 So. 2d 18 (Fla. 5th DCA 1992); *City of Homestead v. Suarez*, 591 So. 2d 1125, 1126 (Fla. 3d DCA 1992)).  At this stage, even if Defendants had established that Plaintiff's arrest was proper, because they have not established on the pleadings that the Deputies did not use excessive force in effectuating that arrest, Plaintiff's battery charge survives.

Similarly, Defendants seek dismissal of Plaintiff's claims for intentional infliction of emotional distress on the basis that "police officers may be held liable under Florida tort law" for intentional infliction of emotional distress only "for extreme abuse of their position."  *Von Stein*, 904 F.2d at 584; *see also Southland Corp. v. Bartsch*, 522 So. 2d 1053, 1056 (Fla. 5th DCA 1988) ("[T]he conduct is privileged and the actor is never liable where he does no more than insist upon his legal rights in a permissible way, even though the actor is well aware that such insistence is sure to cause emotional distress.").  Again, Defendants predicate dismissal on the propriety of the Deputies conduct in arresting Plaintiff.  That is not established here.  As such, Plaintiff's intentional infliction of emotional distress claim survives.

### D.    Plaintiff's Negligent Retention Claim is Sufficiently Pleaded (Count IV)

With respect to Plaintiff's claim for state law negligent retention or supervision against BSO, Defendants request dismissal both on sovereign immunity grounds and for failure to show that BSO was on notice of Lambert's unfitness for employment.

### 1.    Sovereign Immunity Does Not Apply

While, generally, the State of Florida and its subsidiaries are immune from tort liability,

CASE NO. 15-CIV-60060-BLOOM/Valle

Fla. Const., Art. X, § 13, Fla. Stat. § 768.28 expressly waives sovereign immunity in specific circumstances. *See* Fla. Stat. § 768.28. "Florida courts have recognized two exceptions to that waiver: (1) the discretionary governmental functions exception; and (2) the public duty doctrine exception." *Lewis v. City of St. Petersburg*, 98 F. Supp. 2d 1344, 1348 (M.D. Fla. 2000).

Under the discretionary governmental function exception, "a governmental agency is immune from tort liability based upon actions that involve its 'discretionary' functions." *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1266 (11th Cir. 2001) (citing *Dep't of Health & Rehabilitative Servs. v. Yamuni*, 529 So.2d 258, 260 (Fla. 1988)). That is, "basic judgmental or discretionary governmental functions are immune from legal action, whereas operational acts are not protected by sovereign immunity." *Pollock v. Fla. Dep't of Highway Patrol*, 882 So. 2d 928, 933 (Fla. 2004) (citation omitted). "First, for there to be governmental tort liability, there must be either an underlying common law or statutory duty of care with respect to the alleged negligent conduct." *Trianon Park Condominium Ass'n, Inc. v. City of Hialeah*, 468 So. 2d 912, 917 (Fla. 1985). Further, "[a]n act is 'discretionary' when all of the following conditions have been met: (1) the action involves a basic governmental policy, program, or objective; (2) the action is essential to the realization or accomplishment of that policy, program, or objective; (3) the action requires the exercise of basic policy evaluations, judgments, and expertise on the part of the governmental agency involved and (4) the governmental agency involved possesses the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision." *Diaz-Martinez v. Miami-Dade Cty.*, 2009 WL 2970471, at *16 (S.D. Fla. Jun. 9, 2009) (citing *Trianon*, 468 So. 2d at 918 (adopting test set out in *Evangelical United Brethren Church v. State*, 67 Wash. 2d 246 (Wash. 1965)). "An 'operational' function, on the other hand, is one not necessary to or inherent in policy or planning that merely reflects a

secondary decision as to how those policies or plans will be implemented." *Kaisner v. Kolb*, 543 So.2d 732, 737 (Fla. 1989).  Finally, "the Florida Supreme Court [has] described four categories of governmental activities to aid in determining whether a duty of care arises out of a particular government activity:  (1) legislative, permitting licensing, and executive officer functions; (2) enforcement of laws and the protection of the public safety; (3) capital improvements and property control operations; and (4) providing professional, educational, and general services for the health and welfare of the citizens." *Tavcar v. City of Riviera Beach*, 2004 WL 2418311 (S.D. Fla. Aug. 9, 2004) (citing *Trianon*, 468 So. 2d at 919).

Several courts have held that "[c]laims for negligent supervision and retention are considered claims that implicate operational functions of the government, rather than discretionary functions." *Blue v. Miami-Dade Cnty.*, 2011 WL 2447699, at *3 (S.D. Fla. June 15, 2011).  Therefore, "there is no sovereign immunity barrier to making a claim against a governmental agency for negligent retention or supervision." *Slonin v. City of West Palm Beach, Fla.*, 896 So.2d 882, 883 (Fla. 4th DCA 2005); *Dickinson v. Gonzalez*, 839 So. 2d 709, 713 (Fla. 3d DCA 2003) ("[T]here is no sovereign immunity barrier to making a claim against a governmental agency for negligent retention or supervision."); *Doe v. Mann*, 2006 WL 3060036, at *5 (M.D. Fla. Oct. 26, 2006) (same).  Perhaps more accurately, neither hiring nor retention is necessarily "a planning function for which the county is immune from suit, rather than an operational function for which the county may be subject to liability." *Willis v. Dade Cnty. Sch. Bd.*, 411 So. 2d 245, 246 (Fla. 2d DCA 1982).  Here, the facts alleged in the Complaint are sufficient to plausibly state that BSO's decision to retain Lambert after being confronted with his alleged disqualifications and violations was operational rather than inherently discretionary – that BSO, for example, failed to follow its own protocols in retaining Lambert.  *See Shehada*,

CASE NO. 15-CIV-60060-BLOOM/Valle

965 F. Supp. 2d at 1378 ("To sustain a claim against a state agency for negligent hiring, therefore, the plaintiff must present evidence that the agency, in an 'operational capacity,' either disregarded or negligently implemented preexisting hiring protocols.") (citing *Doe v. Miami-Dade Cnty.*, 797 F.Supp.2d 1296, 1304 (S.D. Fla. 2011).   Therefore, Plaintiff's negligent retention claim will not be dismissed based on BSO's sovereign immunity.  *See*, *e.g.*, *Hemmings v. Jenne*, 2010 WL 4005333, at *7 (S.D. Fla. Oct. 12, 2010) (denying motion to dismiss because "[d]epending on the facts, the Sheriff's [BSO's] hiring, retention, and supervision decisions could be operational"); *Napier ex rel. Napier v. Florida Dep't of Corr.*, 2010 WL 2427442, at *5 (S.D. Fla. June 16, 2010) (declining to dismiss, on sovereign immunity grounds, negligent retention claim at motion to dismiss stage).

### 2.     Plaintiff Alleges That BSO Was On Notice Of Lambert's Unfitness

To state a claim of negligent retention of employees, [Plaintiff] must show that [BSO] was put on notice of the harmful propensities of the employees."  *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005) (quotation omitted); *see also Dep't of Envtl. Protection v. Hardy*, 907 So. 2d 655, 660-61 (Fla. 5th DCA 2005) ("Negligent supervision occurs when during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigation, discharge, or reassignment."); *Samedi v. Miami-Dade Cnty.*, 134 F. Supp. 2d 1320, 1352 (S.D. Fla. 2001) (same).  As discussed above, Plaintiff has done so, on the allegations of Lambert's lack of qualifications for his position as an officer and past violations identical to those complained of here.  That is sufficient, regarding notice to the employer, to state a claim for negligent retention.

CASE NO. 15-CIV-60060-BLOOM/Valle

IV.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendants'

Motion to Dismiss, ECF No. [7], is **DENIED**. The Defendants shall file their Answers to the

Complaint **no later than March 27, 2015.**


     **DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this 13th day of

March, 2015.



_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**


cc:    counsel of record